## Middleton *against* The Commonwealth.

2w　285
220　409

　A bill of exceptions to the admission or rejection of evidence, on the trial of one charged by indictment with a criminal offence, is not the subject of consideration upon a writ of error ; although the bill may have been sealed by the court below.

WRIT of error to the judges of the court of quarter sessions of Adams county.

The record exhibited an indictment against Robert W. Middleton for a libel ; on the trial of which, the defendant offered to give in evidence the truth of the facts stated in the alleged libel, on the ground that the matter referred to was of a public character, and likely to affect the public interest. The court below (Reed, president) was of opinion, that the character of the alleged libel must be determined exclusively from an inspection of the paper itself ; and that inspection did not result in the conclusion that the public interest was at all involved in the matter ; and the evidence was rejected. The defendant's counsel requested the court to seal a bill of exceptions to their opinion, which was done.

*Stevens,* for plaintiff in error, argued, that although the court below were not bound to seal the bill of exceptions, yet having

done so, the record exhibited to this court an error of the court below in rejecting the evidence.

*Fuller* and *Galbreath,* for defendant in error, whom the court declined to hear.

The opinion of the Court was delivered by

Gibson, C. J.—It is not pretended that the judges were bound to seal these bills of exceptions ; but it is said, that as they have voluntarily done so, we are bound· to inspect the matter supposed to be thus put on the record.   But the statute sanctions nothing which it does not enjoin ; and as it has been held in Sir Harry Vane's case, according to the report of it in 1 *Levintz* 68, and *Kelynge* 18, to be inapplicable to any criminal matter whatever, the case before us stands precisely as it would have stood before the statute.   To the component parts of a judicial record, as it is defined by the common law, nothing can be added without legislative sanction ; and it was for this reason that a specific provision was thought to be necessary in the statute of frauds to authorise the true date of a judgment to be inserted in the margin of the roll, in order to make it a lien but from the time when it was signed, instead of the first day of the term to which it related by the common law.   In like manner it was necessary to provide specifically, in this statute of Westminister 2, a means by which the court in which the trial was had, might give a party the benefit of an exception in a court of error.   By the forms of the common law the incidents of the trial do not appear in the memorandum called the *postea,* which is indorsed by the English practice on the *nisi prius* roll, and minuted by our own among the entries on the docket ; whence it was necessary to provide, that an exception being reduced to writing and authenticated by the seal of the judge, should be a ground on which an appellate court might proceed to the correction of error of law committed before the jury. These bills of exceptions, therefore, being destitute of the sanction of the statute, are not judicially before us.   Nor is this a defect in our system ; at least, whatever it may seem in theory, it is not a defect in practice ; for the recollection of no lawyer can point to an instance of injustice suffered or conviction procured by straining the law against the accused ; and as to injury from mistake, so rigid is the general observance of the maxim that it is better for ten guilty persons to escape than that one innocent person should be punished, that every doubt is universally resolved in favour of humanity. What more could a philanthropist desire ?   As to a severity of administration, the tendency to err is in the opposite direction ; and the prisoner has an additional and an all sufficient safeguard in the sympathies of the jury.   But though convictions of the innocent are unknown, acquittals of the guilty are abundant ; and if it were an object to increase their number, it could not be denied that it would be promoted by the delay incident to a writ of error ; for when the

[Middleton v. The Commonwealth.]

public has become indifferent to the event, and the anger of the injured party, which lent a temporary activity to the prosecution, has subsided, above all, when the principal witnesses are dead or dispersed, an acquittal on a second trial is pretty much a matter of course. Such is the consequence of postponement in Philadelphia, where offenders are known to consider the removal of their indictment into the supreme court for trial at *nisi prius* as tantamount to an acquittal ; and such it would be in the country, though perhaps to a less extent. There would also be great danger of escape, especially in capital cases, from suffering a convict to go at large during the pendency of his writ of error ; for the responsibility of bail who are seldom prosecuted to judgment for the forfeiture of their recognizance, is daily shown to be an insufficient security for the appearance of one who has reason to apprehend conviction as a felon ; and if, on the other hand, the writ of error were not a *supersedeas*, the punishment prescribed in the sentence would often be inflicted before its legality could be tested. Nor would the reversal of the judgment for a technical defect wipe off the disgrace of conviction, or exempt the accused from a renewal of the prosecution. Besides, it is proved by all experience, that the efficacy of punishment depends on its promptness and certainty, and that the more we multiply the chances of eventual escape, the more we take from its influence. As to the supposed value of a proceeding to settle contested principles of criminal law in the tribunal of the last resort, it is enough that the jury are in these cases the tribunal of the last resort, being declared by the constitution to be judges in criminal cases of the fact and the law ; so that little would be gained by going to the supreme court for a rule which would be no rule at all to those who are entrusted with the final decision of the question of guilt or innocence. We are unwilling to introduce into the administration of the criminal justice, disorders so prejudicial to the general weal, by departing from a construction which has prevailed without interruption for near two centuries ; and entirely disregarding the bills of exceptions, we are bound to say there is no error in the record.

Judgment affirmed.