## Schoeppe *versus* The Commonwealth.

1. A writ of error in a criminal case with consent of the attorney-general, under the 33d sect. of the Act of March 31st 1860 (Criminal Procedure), applies only to common-law writs of error.

2. At common law no bills of exception were permitted in criminal cases; nor did the evidence, rulings and opinion of the court form any part of the record.

3. The 57th, 58th, 59th and 60th sections of the Criminal Procedure Act construed.

4. The limitation in these sections to thirty days, is incompatible with the issuing of a writ of error with the consent of the attorney-general at any time afterwards.

5. The Act of February 15th 1870, allowing writs of error in murder, &c., as in civil cases, applies only to future writs of error and those pending at the passage of the law.

6. A writ of error was issued on a conviction for murder; the judgment was affirmed February 14th; this writ of error was not pending under the Act of February 15th, although the act had previously been passed by the legislature and passed over the governor's veto on the 15th.

7. A judgment of affirmance by the Supreme Court can be opened only where the court has committed a mistake, which justice requires should be rectified.

8. The Act of 1870 provides no means to take, preserve and bring up the evidence.

9. Act of 1870 construed.

10. Middleton *v.* Commonwealth, 2 Watts 285; Commonwealth *v.* Mayloy, 7 P. F. Smith, recognised.

February 8th and 9th 1870, at Philadelphia.  Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.  THOMPSON, C. J., at Nisi Prius.

Error to the Court of Oyer and Terminer of *Cumberland county*, from the Middle District: Of May Term 1869.

At the Court of Oyer and Terminer, held May 24th 1869 (Graham, P. J.), Paul Schoeppe was indicted and tried for the murder of Maria M. Steinnecke by poison.  During the trial, a number of bills

[Schoeppe v. The Commonwealth.]

of exceptions to the rulings of the court upon the evidence and also to the charge of the court were sealed. On the 3d of June the jury found the prisoner "guilty of murder in the first degree." A motion for a new trial was made and argued. The motion was overruled, and the prisoner sentenced.

On the 4th of September, within thirty days after the sentence, under the 57th and 59th sections of the Criminal Procedure Act (Pamph. L. 443, 444, Purd. 260, 261, pl. 57, 59), a special application was made by the prisoner to Chief Justice Thompson for the allowance of a writ of error. After a hearing by him, and upon consultation with Justices Read and Sharswood, the allocatur with concurrence of these judges was refused. Subsequently, with consent of the attorney-general, under the 33d section of the same code (Purd. 256, pl. 33), a writ of error was sued out.

The prisoner assigned seven errors to the admission of evidence and twenty to the charge of the court. No errors were alleged to the record.

The point on which the Supreme Court decided the case, makes any further statements in regard to it unnecessary.

It was argued by *S. Hepburn, Jr.*, and *W. H. Miller* (with whom were *H. Newsham* and *S. Hepburn*), for the plaintiff in error, and by *C. E. Maglaughlin* and *F. C. Brewster*, Attorney-General (with whom was *W. J. Shearer*), for the Commonwealth.

The opinion of the court was delivered, February 14th 1870, by READ, J.—Maria M. Steinnecke died at Carlisle on Thursday, 28th January 1869. Dr. Paul Schoeppe, who had been her medical attendant during her last illness, was arrested upon the charge of having poisoned her, indicted, tried and convicted of murder in the first degree. The trial commenced before Judge Graham on Monday, 24th May 1869, and lasted eleven days, terminating on Thursday, the third day of June, in a verdict of guilty. A motion was made for a new trial, which was fully argued and refused by the court, who sentenced the prisoner.

On the 4th September 1869, within the thirty days prescribed by the Act of Assembly, a special application for the allowance of a writ of error was made to Chief Justice Thompson, and cause shown on behalf of the prisoner. On the 15th of the same month, after a careful examination of the exceptions and allegations of error presented, together with a report of the trial furnished by the counsel for the prisoner, participated in by Mr. Justice Read and Mr. Justice Sharswood, the three judges concurred in agreeing that they saw no grounds for the allowance of a writ of error, and the allocatur prayed for was therefore refused.

Since then a writ of error has been sued out by the prisoner in the Middle District, with the consent of the attorney-general, in

writing, and certified on the said writ, under the 33d section of the Act of 31st March 1860, relating to penal proceedings and pleadings, which is but a re-enactment of the 7th section of the Act of 13th April 1791, and of the 9th section of the Act of 16th June 1836, relative to the jurisdiction and powers of the courts.

This section applies only to common-law writs of error in all criminal cases, and simply makes the consent of the attorney-general equal to an allowance of the Supreme Court, or one of the justices thereof, and in no manner changes or affects the writ of error itself, as to what it brings judicially before the court, or the power of the court itself under it.

It remains simply a writ of error at common law.

Upon an application made during the present session to fix a day for the hearing of this writ of error, we assigned the first Monday of February, and the argument was commenced on Tuesday and closed on Wednesday. The widest possible range was given to the counsel on both sides, under a distinct declaration from the court, that it was no pledge that the court should be in any manner bound or controlled by having heard any matters discussed which the court should eventually think either irrelevant or not within the scope of their powers as a court of error.

At common law, both in England and Pennsylvania, no bills of exceptions were permitted in criminal cases, nor did the evidence, nor the rulings and opinion of the court, form any part of the record, nor were they ever seen or noticed in a court of record. In Middleton v. Commonwealth, 2 Watts 285, where, upon the trial of an indictment for a libel, evidence was rejected, and the defendant's counsel requested the court to seal a bill of exceptions to their opinion, which was done, Gibson, C. J., said: "It is not pretended that the judges were bound to seal these bills of exceptions, but it is said, as they voluntarily did so, we are bound to inspect the matter supposed to be thus put upon the record." After showing that the Statute of Westminster 2 did not extend to criminal trials, he said: "These bills of exceptions, therefore, being destitute of the sanction of the statute, are not judicially before us. Nor is this a defect in our system; at least, whatever it may seem in theory, it is not a defect in practice; for the recollection of no lawyer can point to an instance of injustice suffered, or conviction procured, by straining the law against the accused."

On the 6th of November 1856, an act was passed "allowing bills of exception and writs of error in criminal cases."

This act, with some alterations in form, and excluding its two last sections, is to be found in the 57th, 58th, 59th, 60th and 61st sections of the Revised Act of 31st March 1860, relating to penal proceedings and pleadings. By these sections provision is made that upon the trial of any indictment for murder or voluntary

[Schoeppe *v.* The Commonwealth.]

manslaughter, the defendant may except to any decision of the court upon any point of evidence or law, which exception shall be noted by the court, and filed of record, as in civil cases, and a writ of error may be taken to the Supreme Court by the defendant after conviction and sentence.'

It is made the duty of the court upon any point submitted and stated in writing, to answer the same fully, and file the point and answer with the records of the case.

No writ shall be allowed unless special application be made therefor, and cause shown within thirty days after sentence. pronounced.

The application was made and cause shown within the thirty days, and the writ was not allowed, but distinctly refused, and this closed the proceedings under the Act of. 1860.

This court, in Fife *v.* Commonwealth, 5 Casey 429, and in Hopkins *v.* Commonwealth, 14 Wright 9, held that under this act it was confined to exceptions taken on the trial to some question of law or evidence, or to the opinion of the court below, upon a written point, which, together with the decision, must be filed with the records of the case.

The revisers of the penal code say, "These sections are taken from the 1st, 2d, 3d, 4th and 5th sections of the Act of the 6th November 1856;" and they have wisely and deliberately omitted the 7th section, which gave the defendant the right "to assign errors to the charge of the court as fully and with the same effect as if exceptions were taken to such charge when delivered to the jury."

The hearing, therefore, before us was upon a writ of error at common law, upon which no errors could be assigned but those which were apparent on the face of the record itself. We could, therefore, not legally or in our judicial capacities look at the evidence, the bills of exceptions and the charge of the court, much less at the large mass of extraneous ‚matter pressed upon our attention and notice.

We have nothing to do with the guilt or innocence of the prisoner, and all we can say is, that we discover no error in the record.              Judgment affirmed, and record remitted.

On the 15th of February 1870 the following Act of Assembly was passed (Pamph. L. 15):—

"Sect. 1. In all cases of murder and voluntary manslaughter, a writ of error from the Supreme Court to the court trying the same shall be of right, and may be sued out upon the oath of the defendants or defendant, as in civil cases.

"Sect. 2. In all cases of murder in the first degree, removed into the Supreme Court under the provisions of the 1st section of this act, or now pending in the said court, it shall be the duty of the

[Schoeppe v. The Commonwealth.]

judges thereof to review both the law and the evidence, and to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist; and if not so proved, then to reverse the judgment and send the same back for a new trial, or to enter such judgment as the laws of this Commonwealth require.

" Sect. 3. All writs of error now pending in the Supreme Court, in any case of murder or voluntary manslaughter, shall be held regular and of force to remove such cases, and to authorize and require the Supreme Court to hear and determine the same with like effect as if sued out after the passage of this act."

By virtue of this act the prisoner sued out a second writ of error from the Middle District, No. 75, to May Term 1870. With the writ were returned the charge of the court, the prisoner's points and the answers, and the bills of exceptions to decisions on evidence and to the charge.

The cause came on for argument at Harrisburg, May 13th 1870, when C. E. Maglaughlin, district attorney, filed a plea of former judgment. The prisoner filed replications to the Commonwealth's plea, to which the district attorney rejoined. The prisoner also moved, upon his petition filed, to open the judgment of affirmance of February 14th 1870.

The case was argued, May 26th 1870, at Harrisburg, before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

S. Hepburn, Jr., and W. H. Miller, for plaintiff in error.

W. J. Shearer and C. E. Maglaughlin, District Attorney, for Commonwealth.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—Upon the trial of an indictment for murder or voluntary manslaughter, the defendant may, under the Act of 31st March 1860, except to any decision of the court upon a point of evidence, or of law. He may also require the court to give an opinion upon any point submitted in writing, to reduce the answer to writing, and file it and the point of record. The act then allows a writ of error, but provides that no such writ shall be allowed, unless special application be made therefor, and cause shown within thirty days after sentence is pronounced, to the Supreme Court, if sitting in banc, or to a judge in vacation. This is a wise and salutary provision to guard the interests of the public against unfounded writs of error, and all the consequences of dilatory punishment, and, at the same time, to protect the defendant against unjust conviction. The writ must, therefore, be specially allowed, and if the defendant fail to make his application within thirty days, or if the cause shown be insufficient, the case

[Schoeppe *v*. The Commonwealth.]

is at an end, under the Act of 1860, the bills of exception fall, and the judgment stands for execution.

In this case, a special application for a writ of error was made within thirty days to Chief Justice Thompson, who, after conference with Read and Sharswood, JJ. (they concurring with him), found no sufficient cause to allow the writ of error, and it was, therefore, refused. The prisoner's counsel then applied to the attorney-general for his consent to a writ of error, under the 33d section of the Act of 1860. This section applies to writs of error in all cases of indictment in the Courts of Quarter Sessions and Oyer and Terminer, and does not embrace the cases of murder and voluntary manslaughter, specially provided for in the 57th, 58th and 59th sections of the same act, confining the allowance of the writ to the Supreme Court, as before stated. The Act of 1860 is a revision of all the criminal laws of the state by a learned commission, headed by that eminent criminal lawyer, Judge King. It cannot be supposed they intended the several parts of the act to conflict with each other. The limitation to thirty days, and to cause shown to the court *in banc*, or one of its judges, is incompatible with the issuing of a writ of error upon the mere consent of the attorney-general, at any time afterward. The attorney-general, however, from motives of humanity, and the point not having before arisen in practice, gave his consent, and the writ of error was issued and heard before us, at Philadelphia. But the defendant having failed to bring up his bills of exceptions under the 59th section of the Act of 1860, it became evident that the writ of error then before us brought up nothing but the common-law record, in which it was not pretended there was any error. The judgment of the Court of Oyer and Terminer was of course affirmed. Thus the case passed into final judgment; for the affirmance being by the highest court in the state, there could be no writ of error to it. This judgment being rendered, the record was remitted to the court below, on the 14th day of February 1870.

On the 15th of February 1870, a law was passed allowing writs of error in cases of murder and voluntary manslaughter, as a matter of right, without a special application under the Act of 1860. The case of Paul Schoeppe having been decided before the passage of the act, he has obtained a second writ of error from the prothonotary, claiming it as a matter of right under the late act, and this writ is now before us. The Commonwealth, relying on the judgment of affirmance under the former writ, has pleaded that judgment in bar of this writ. The Act of 1870 applies only to future writs of error, and to those pending in this court when the law was passed. Final judgment having been rendered, and the record remitted on the 14th of February, the case was not pending before us on the 15th, when the law was

[Schoeppe v. The Commonwealth.]

passed. The plea in bar must, therefore, prevail. The defendant's counsel perceiving this unavoidable result, has moved us to open the judgment of affirmance, given in the former writ of error, in the hope that we may, on opening it, treat the case as a writ pending at the passage of the law, intending then to apply to it the provisions of the Act of 1870. This motion is also before us, and involves two questions, one upon the power of the court to open the former judgment after the term had expired, and the other upon the applicability of the Act of 1870 to the case, if the judgment should be opened.

It is not necessary to decide the question of power, but it is opposed by authority, and some strong reasons. The Commonwealth v. Mayloy, 7 P. F Smith 291, decided against the exercise of this power by the Courts of Quarter Sessions and Oyer and Terminer, after the expiration of the term, notwithstanding a rule had been entered to show cause against the sentence. The same reasons therein given would seem to apply as well to this court. The fact that we act as a court of review to correct the errors of lower courts, does not seem to justify a revision of our own final judgments. The law requires an end of litigation, and, admitting the power, litigation may never come to an end; for the same power will enable us to review the judgment of review, and so on *toties quoties*. The English authorities are against the power, and there appear to be no good reasons for its exercise in this state, that do not exist elsewhere. The power being admitted after the first term has passed, there is no limitation of time, and the doors of prisons and penitentiaries may be opened at any time before sentence is finally executed. This clearly would be an infringement of the pardoning power, in our case, as much as it could be affirmed of the judges of the inferior courts. In times of high excitement, a change of judges would often be the signal for a change in judgments, upon cases exciting the popular mind. But, granting the existence of the power, for we do not decide it at this time, it is very clear it can be exercised by us only where we have made a mistake, or committed an error which justice requires us to rectify. Judicial discretion is not the pleasure of the court, nor the arbitrary result of our will, but is governed by sound judgment founded on good reason and controlled by a conscientious conviction of right. In this case there has been no mistake made, no error which our sense of justice calls upon us to correct. It cannot be pretended that our judgment on the former writ of error was incorrect. We are now as firmly of opinion as then, that the defendant had his day under the Act of 1860, and no remedy remained to him under that act. We are now as firmly of the opinion as then, that the writ of error consented to by the attorney-general was improvidently issued, and brought up with it nothing but the common-law record. If,

[Schoeppe *v.* The Commonwealth.]

therefore, we should now open the judgment in that case, it would
be an act of questionable power in the first place, and one of
mere sympathy in the second; and not the exercise of a sound
judicial discretion.

But, should we permit sympathy to override judgment, how is
the defendant's situation bettered? The former writ of error was
not pending at the passage of the Act of 1870, and therefore not
then within its terms. If not then within the law, nothing but
another law can place it there. Ours is not the power of legisla-
tion, and the moment we determine judicially, as we must, that
the case was not within the law, no act of ours nor effort of ours,
can bring it within the law. If not then pending, the fact of
opening the judgment and making it a writ now pending, does
not draw it within the folds of the law by any retro-operation of
ours; but we are merely sent back to the case as it stood when
final judgment was rendered before the passage of the law. We
can have before us nothing but what we then had before us, and
that was the common-law record. If we open it to consider it
anew, we consider it not by force of the Act of 1870, for that did
not embrace it, but by force only of our judicial discretion, which
can remit us only to that which we passed upon before, in order
to consider it again.

Having, then, no ground of error or mistake in our former judg-
ment, the Act of 1870 having no application, and the defendant
being in no better position by the opening of the judgment, we
are compelled to decline opening it.

It is not improper, before closing, to say a few words in refer-
ence to the Act of 1870, to draw attention to some of its defects,
and to the radical change in our criminal jurisprudence it will
produce. It was passed for this case, but owing to the governor's
veto it came too late. It is another evidence that laws which are
the offspring of feeling are seldom wisely framed. It commands
this court to review the *evidence*, and to determine whether the
ingredients to constitute murder in the first degree were proved
to exist, and yet, in forgetfulness of the former law, it provides
no means to *take, preserve* and *bring up* the *evidence*. This, the
first attempt to act under it, proves its inefficiency, the judge
below returning to our certiorari that he was not able to make the
return of the evidence. He is not bound by law to take the tes-
timony, or to certify to it. A bill of exception brings up only so
much of the evidence as may be required to explain the point of
law contained in the bill.

The effect of this law seems not to have excited attention. It
has changed the whole doctrine of the criminal law as to the speed
and certainty of punishment, and left to the felon both the hope
and a door of escape, not only from the law's delay, but by prison

[Schoeppe *v.* The Commonwealth.]

breach, and all the various means of avoiding retributive justice. At this moment two cases occur to my memory of convictions of murder in Allegheny county, delayed by dilatory motions, where the prison-doors opened by unknown means, and the prisoners escaped for ever. Any murderer may, under this law—though, like Probst, he may have murdered a whole family—take out his writ of error, without limitation of time or condition, whether in prison under sentence, or stepping upon the trap of the gallows, with cause or without it, and suspend his case until the next term of the Supreme Court. No one could condemn him if, the death-warrant not preventing, he should wait till the term of the Supreme Court be passed, and then take out his writ of error to delay the execution of his sentence for a whole year. That only security to the public, the examination of the case and allowance of the writ for cause, is repealed. To us, as judges, it makes no difference, for to us it is immaterial whether we hear civil or criminal cases. Indeed, it is more easy to decide on the merits of the evidence in a criminal case, than upon a difficult and abstruse question of law in a complicated civil case.

The motion to open the judgment in the former writ of error is refused, and on this writ of error judgment is given for the Commonwealth, on the plea of former judgment, and the record is ordered to be remitted.