# Commonwealth, Appellant, *v.* Carlucci.

*Criminal law—Indictment—Quashing indictment—Terms of court.*

1. Where the court of quarter sessions directs the grand jury to convene on August 23 instead of September 7, the usual time for meeting, an indictment found on August 31 will not be quashed, where it appears that the prisoner entered into a recognizance on August 5 for his appearance "at the next court of quarter sessions" and that he was in no way injured by the order fixing an earlier day for the convening of the grand jury.

2. Where a motion to quash an indictment is based on allegations of extraneous facts which, if sustained by evidence, would warrant the

court in quashing, and evidence pro and con has been submitted to the court, the questions whether the allegations are sustained by the preponderance of testimony is not brought before the appellate court for determination by the commonwealth's exception to, and appeal from the order quashing, except in cases of nuisance and forcible entry and detainer.

Argued March 7, 1911. Appeal, No. 26, March T., 1911, by the Commonwealth, from order of Q. S. Luzerne Co., Sept. T., 1909, No. 202, quashing indictment in case of Commonwealth v. Frank Carlucci et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for conspiracy.

On a motion to quash the indictment SHULL, P. J., specially presiding stated the facts to be as follows:

1. On information of Thomas M. Clancy, of 301 West 111th street, New York City, N. Y., made before John P. Pollock, of Wilkes-Barre, Pa., on August 8, 1909, the defendants were charged with fraudulently and maliciously conspiring, confederating and agreeing, between themselves and with others unknown, to cheat and defraud the county of Luzerne, state of Pennsylvania, under and by virtue of a contract for the erection of a new courthouse, by substituting other, different and inferior material than that provided by said contract, to the injury of the said county.

2. On July 9, 1909, defendants were arrested, brought in and held in their own recognizance, to appear at 10 A. M., July 13, 1909, at which time continuance was had to 3 P. M. of said day, and again continued until August 3, at 10 A. M. On August 5, 1909, defendants entered into recognizance for appearance at the next court of quarter sessions, to be holden in and for the county of Luzerne, which said court, under rule 22 "Rules of Court" would convene on September 7, 1909.

3. On July 20, 1909, the county commissioners of said county presented a petition to the judges of said court, in which it is averred, inter alia, "that since the erection

and occupation of the courthouse buildings numerous allegations have been made through the public press, and otherwise, that some of the specifications and contracts entered into by the county of Luzerne with the various contractors on said building, have not been complied with. . . ." That petitioners have no personal knowledge of any frauds perpetrated as aforesaid, but desire that a thorough investigation be made of all such charges, etc., and praying that a special grand jury be summoned to investigate said specifications, contracts and work performed. Whereupon said court, after due consideration, and with the concurrence of the district attorney, ordered and directed a grand jury to be summoned in the same manner as required by existing law to meet on August 23, 1909, to consider the matters alleged in the petition, as well as all other matters which may be proper for their consideration.

4. That said grand jury were especially convened pursuant to said order and decree on August 23, 1909, and engaged in the matter of investigation submitted, as well also considering bills of indictment presented by the district attorney. During the investigation the grand jurors were not at all times kept together, outsiders mingled and conversed with them, testimony of witnesses were heard by the grand jury upon the specific charges contained in the bill of indictment, whose names were not indorsed upon the bill, persons were present in the grand jury room other than the district attorney and his stenographer, who were not there as witnesses.

5. That afterwards, to wit, on or about August 31, 1909, on presentation of a bill of indictment drawn by the district attorney, upon the information against defendants, a "true bill" was found by said grand inquest, wherein it is charged that the defendants "on or about the eighth day of October, in the year of our Lord One thousand nine hundred and eight . . . . did unlawfully, falsely and maliciously conspire and agree," etc.

The court entered an order quashing the indictment.

*Error assigned* was the order of the court.

*W. Alfred Valentine*, district attorney, for appellant.—
That the court possessed the power to make the order of
July 20, cannot be doubted: Com. v. Smith, 4 Pa. Supe-
rior Ct. 1.

The defendant had full, ample and abundant opportu-
nity to challenge any grand juror on the day which the
grand jury met, and on which it had been directed to
meet, over two weeks before they entered into the recog-
nizance.  The provision of secrecy not only surrounds the
grand jurors, but also includes their clerk, if he be not
one of their number, and the district attorney: Com. v.
Twitchell, 1 Brewst. 551.

The evidence is uncontradicted and undisputed that
when the present indictment was acted upon no third
party was present in the grand jury room, not even the
stenographer.  The fact that a stenographer took notes
of testimony in connection with the hearings during the
investigation does not invalidate the indictment: Com. v.
Hegedus, 44 Pa. Superior Ct. 157.

*John T. Lenahan*, with him *John Q. Creveling*, for ap-
pellee.—The proceedings on this indictment come within
the ban of the decisions in the lower courts in the follow-
ing cases: Com. v. Wilson, 6 Kulp, 40; Com. v. Bayley,
22 York Leg. Rec. 104; Com. v. Cochran, 22 Lancaster
Law Review, 188.

OPINION BY RICE, P. J., October 9, 1911:

It appears, by the transcript of the magistrate sent up
with the record on this appeal, that the defendants were
arrested upon an information charging them with con-
spiracy; that they demanded and received a hearing be-
fore the magistrate, which was continued through several
adjournments; and that on August 5, 1909, they appeared,
waived further hearing, and gave bail conditioned for
their appearance at the next court of quarter sessions.

Under ordinary conditions and the standing rule of the court of quarter sessions of Luzerne county, the grand jury for the next session of the court would have convened on September 7. As early, however, as July 20 preceding, the court, upon the petition of the county commissioners setting forth appropriate reasons for the action prayed for, had made an order summoning the next grand jury to convene on August 23, 1909, instead of on the usual date, September 7, and had directed "this order to be published as the law requires." This action of the court was expressly authorized by the second section of the Act of March 18, 1875, P. L. 28, and the order was presumably published in the manner therein required. The contrary is not alleged. All committing magistrates of the county were, by the third section of said act, required to take notice of the order and make their returns accordingly. In due course, the grand jury convened as ordered, and, on August 31, 1909, returned a true bill against the defendants. Later, when the case was called for trial, they filed a motion to quash the indictment, assigning four specific reasons in support of it.

The first reason was, "the time of the commission of the offense as laid in the indictment is too vague and indefinite." This reason is not discussed by counsel in their briefs, and, as we view the case, it will not be necessary to pass upon it. We, therefore, express no opinion as to the validity of this objection to the indictment.

The second reason assigned was, "the grand jury met and returned a true bill in the above case at a period of time anterior to that for which the defendants were bound over by the recognizance to appear and answer the offense charged." The learned judge specially presiding, after showing that an accused defendant has the right to challenge one or more of the individual grand jurors who are to pass upon the bill indicting him, or to move to quash the entire array for cause shown, seems to have reached the conclusion that to sustain the bill would amount to a denial of the right or rights referred to. We

are unable to agree with this conclusion.  As we have already seen, by the operation of the act of 1875 and the order of the court made pursuant to its provisions, the session of the grand jury next following the date on which the defendants gave bail was lawfully fixed for August 23. The defendants presumably had the same information respecting the date of that session as in any other case. They do not allege that they did not, in fact, know it. They do not assert that, by reason of the order made, they were in any degree or to any extent denied the full exercise of their right to challenge either the array or any one or more of the individuals summoned to sit on that jury.  Under these circumstances, this reason for quashing the indictment should have been rejected.  The difference between the situation thus presented and that which was disclosed in the case cited by the learned judge in support of his ruling, is manifest.  No case has been cited, and none, we believe, can be found, which ought to have constrained the court to recognize the validity of this reason and quash the bill on that account. A contrary ruling would have been fully sustained by our decision in Com. v. Smith, 4 Pa. Superior Ct. 1.

In the third and fourth reasons assigned in support of the motion to quash, it was alleged: (a) that "witnesses testified before the grand jury as to facts on which the indictment was based whose names are not endorsed as such witnesses upon the indictment;" (b) that "in the rendition of the testimony on which the indictment was based, there were present in the grand jury room during the deliverance of said testimony persons who were neither grand jurors nor officials of the district attorney's office authorized to be so present."  Whilst it is true that a motion to quash a bill for matters dehors the record is addressed to the discretion of the court, a discretion regulated by judicial rule, and it is also true that, according to the practice in some jurisdictions, the decision is not open to review in the higher courts, yet in Pennsylvania the practice is otherwise, and it is well settled that, for

error of law fairly deducible from the record, the quashing of an indictment may be reviewed and reversed on appeal: Com. v. Bradney, 126 Pa. 199. Numerous cases might be cited in support of this proposition, but it is unnecessary. In Com. v. Hegedus, 44 Pa. Superior Ct. 157, we said: "A perusal of many cases from different jurisdictions shows that the mere presence of an unauthorized person in the grand jury room during the taking of testimony, although an irregularity, is not necessarily and under all circumstances fatal to the indictment; it depends, according to these authorities, upon the circumstances of the particular case." But it cannot be denied that, under the foregoing specifications of irregularities, it was competent for the court to receive evidence which would justify it in sustaining the motion. Hence, it cannot be said that the quashing of the indictment upon the grounds laid in these specifications was based on legally insufficient reasons. And even if it be conceded that the decision, by the court, of the questions of fact arising upon the evidence, is reviewable on appeal, it must also be conceded that its decision ought not to be overruled except for clear error or plain abuse of discretion. See Com. v. Green, 126 Pa. 531, 541; Com. v. Bolger, 42 Pa. Superior Ct. 115, 120. Particularly is this so in a case where the evidence is conflicting and the question is as to the side in favor of which it preponderates.

But, in view of the elaborate argument that has been made upon the evidence, it becomes important to go a step further and to consider our revisory jurisdiction so far as questions of fact are concerned. The order of the quarter sessions, quashing an indictment, is the judgment of a court of record according to the course of the common law; and, until the passage of the act of 1889, denominating every appellate proceeding an appeal, the strictly appropriate method of review was by writ of error: Com. v. Haas, 57 Pa. 443. Notwithstanding the act of 1889, an appeal from such a judgment is, in legal effect, a writ of error; the statutory change of the name of the appellate

proceeding did not extend the right of review or change its extent in cases already provided for, or modify in any manner its exercise: Rand v. King, 134 Pa. 641. Prior to the Act of May 19, 1874, P. L. 219, a bill of exceptions was not allowed in cases triable in the quarter sessions, and, without a bill of exceptions, the evidence in such cases is not on the record for purposes of review. The decisions upon that subject are clear. "At common law, both in England and Pennsylvania, no bills of exceptions were permitted in criminal cases, nor did the evidence, nor the rulings and opinion of the court, form any part of the record:" READE, J., in Schoeppe v. Com., 65 Pa. 51. "It is beyond all question that the statute of Westminster was never held to apply to proceedings in criminal courts:" SHARSWOOD, C. J., in Haines v. Com., 99 Pa. 410. In Middleton v. Com., 2 Watts, 285, which was cited with approval in Schoeppe v. Com. and Haines v. Com., and followed in Com. v. Superintendent of Prison, 220 Pa. 401, s. c., 33 Pa. Superior Ct. 594, and Com. v. Layton, 45 Pa. Superior Ct. 582, it was declared that, though the judge had voluntarily sealed a bill, yet, as it was not enjoined by the statute, the matter therein contained could not be considered. Chief Justice GIBSON said: "It is not pretended that the judges were bound to seal these bills of exceptions; but it is said that, as they have voluntarily done so, we are bound to inspect the matter supposed to be thus put on the record. But the statute sanctions nothing which it does not enjoin; and as it has been held in Sir Henry Vane's case, according to the report of it in 1 Levinz, 68, and Kelyng, 14, to be inapplicable to any criminal matter whatever, the case before us stands precisely as it would have stood before the statute." The act of 1874 authorizes a bill of exceptions in favor of the commonwealth in two cases only— nuisance and forcible entry and detainer. Com. v. Bradney, 126 Pa. 199, was a case of nuisance, and, as pointed out by Justice CLARK, the proceeding to quash was to be considered as part of the trial, and, as under the act of

1874 an exception lay in favor of the commonwealth in cases of nuisance, the evidence adduced on the hearing of the motion was brought on the record by the exception to the order quashing. It is thus seen that that case is not authority for holding that the commonwealth may in every criminal case bring the evidence on the record by excepting to the order quashing the indictment. And, after a somewhat extended examination, we find no case which would sustain that general proposition. The law upon that subject, except in the two cases mentioned, remains as it was before the act of 1874. It logically follows that where the motion to quash is based on allegations of extraneous facts which, if sustained by evidence, would warrant the court in quashing, and evidence pro and con has been submitted to the court, the question whether the allegations are sustained by the preponderance of testimony is not brought before the appellate court for determination by the commonwealth's exception to, and appeal from, the order quashing, except in cases of nuisance and forcible entry and detainer. Entertaining these views as to our revisory jurisdiction, we are unable to say that reversible error was committed in sustaining the third and fourth reasons.

The order is affirmed.