# Commonwealth ex rel., Appellant, v. Superintendent of Philadelphia County Prison.

*Extradition—Constitutional law—Sufficiency of warrant—Character of the offense.*

Under the act of congress of February 12, 1793, Rev. Stat. 1022, passed in furtherance of sec. 2, art. IV, of the constitution of the United States, relating to extraditions, it is requisite that a demand for the fugitive from justice be made by the executive authority of the state or territory from which he fled; that this be accompanied by an indictment found, or an affidavit made before a magistrate charging the fugitive with having committed a crime against the law of the state or territory; and that the copy of the indictment or affidavit be certified as authentic by the chief executive of the state or territory from which such person fled. The court must also find that the accused is in fact a fugitive from justice.

If the jurisdictional facts authorizing the extradition of the accused appear from the papers, the court on a hearing in habeas corpus proceedings will not go into the merits of the case, nor determine the guilt or innocence of the accused; nor will the court consider evidence to the effect that the criminal proceedings were instituted in the demanding state with bad motives.

It is the province of the courts of the state where the crime was committed to declare what its laws are and to determine whether particular acts on the part of an alleged offender constitute a crime under such laws.

*Appeals—Records—Evidence—Extradition proceedings—Bill of Exceptions.*

An appeal from an order in extradition proceedings takes up only the record, and not the evidence. The fact that the judge of the quarter sessions granted a bill of exceptions, is immaterial, since it is based on no statutory authority.

Argued Jan. 21, 1908. Appeal, No. 228, Jan. T., 1908, by plaintiffs, from judgment of Superior Court, Oct. T., 1906, No. 1,906, affirming order of Q. S. Phila. Co., Feb. T., 1907, No. 2, remanding relator to custody in case of Commonwealth ex rel. Richard C. Flower v. The Superintendent of Philadelphia County Prison. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from judgment of the Superior Court.

The facts appear by the opinion of the Supreme Court.  See 33 Pa. Superior Ct. 594.

*Error assigned* was the judgment of the Superior Court.

*John C. Bell,* with him *John McClintock, Jr., John C. Grady* and *E. Clinton Rhoads,* for appellant.—In a requisition proceeding a relator will not be remanded when the writ is not sought in good faith to secure punishment for crime, but is intended to enforce the collection of a debt: Work v. Corrington, 34 Ohio, 64; Tennessee v. Jackson, 36 Fed. Repr. 258; Grin v. Shine, 187 U. S. 181 (23 Sup. Ct. Repr. 98); In re Herres, 33 Fed. Repr. 165; Ex parte Slauson, 73 Fed. Repr. 666; Hyatt v. People, 188 U. S. 691 (23 Sup. Ct. Repr. 456); Bruce v. Rayner, 62 C. C. A. 501 (124 Fed. Repr. 481); People ex rel. v. Hyatt, 172 N. Y. 176 (64 N. E. Repr. 825); Ex parte Butler, 7 Luz. Leg. Reg. 209; People ex rel. Lawrence v. Brady, 56 N. Y. 182; Wilcox v. Nolze, 34 Ohio, 520; Illinois v. Pease, 28 Sup. Ct. Repr. 58; In re Fowkes, 53 Fed. Repr. 13; In re Dana, 63 Fed. Repr. 886.

The appellate court will on appeal investigate the facts of a case to the extent of determining whether the lower court acted within its jurisdiction, or whether it considered a right to which the relator was entitled: In re Hummell & Bishoff, 9 Watts, 416; Chester County Republican Nominations, 213 Pa. 64; Independence Party Nomination, 208 Pa. 108; Robb's Nomination, 188 Pa. 212; Com. v. Gibbons, 9 Pa. Superior Ct. 527; Prospect Brewing Co.'s Petition, 127 Pa. 523; Com. v. Edmiston, 30 Pa. Superior Ct. 54; Com. v. Perkins, 124 Pa. 36; In re Chetwood, 165 U. S. 443 (17 Sup. Ct. Repr. 385); In re Cuddy, 131 U. S. 280 (9 Sup. Ct. Repr. 703); Dibble v. Bellingham Bay Land Co., 163 U. S. 63 (16 Sup. Ct. Repr. 939); In re Panzara, 51 Fed. Repr. 275; Wright v. Henkel, 190 U. S. 40 (23 Sup. Ct. Repr. 781); Ornelas v. Ruiz, 161 U. S. 502 (16 Sup. Ct. Repr. 689); Gosline v. Place, 32 Pa. 520; Com. v. Butler, 19 Pa. Superior Ct. 626; Com. v. Blatt, 165 Pa. 213.

*Morris Wolf,* with him *John M. Patterson,* assistant district attorney, and *Samuel P. Rotan,* district attorney, for appellee, cited: Com. v. Edmiston, 30 Pa. Superior Ct. 54;

Com. v. Linaugh, 13 Pa. Dist. Rep. 486; Com. v. McCandlass, 7 Pa. C. C. Rep. 51; Grin v. Shine, 187 U. S. 181 (23 Sup. Ct. Repr. 98); Pettibone v. Nichols, 203 U. S. 192 (27 Sup. Ct. Repr. 111); In re White, 55 Fed. Repr. 54; In re Bloch, 87 Fed. Repr. 981; Bruce v. Rayner, 62 C. C. A. 501 (124 Fed. Repr. 481); In re Strauss, 126 Fed. Repr. 327; Singleton v. State, 144 Ala. 104 (42 So. Repr. 23); Blackwell v. Jennings, 57 S. E. Repr. 484; In re Herskovitz, 136 Fed Repr. 713; Ex parte Slauson, 73 Fed. Repr. 666; Work v. Corrington, 34 Ohio, 64.

OPINION BY MR. JUSTICE MESTREZAT, March 16, 1908:

The constitution of the United States, article IV, section 2, provides that: " A person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." Pursuant to this constitutional provision and to carry it into effect, congress passed an act which provides that: " Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, . . . . and cause the fugitive to be delivered to such agent (of the demanding state) when he shall appear : " Sec. 5278 of the Revised Statutes of the United States.

The requisition of the executive of the demanding state must show that the accused has committed a crime within the jurisdiction of that state, and that he is a fugitive from justice. It must be accompanied by a copy of the indictment found or affidavit made before a magistrate charging the offense committed, and duly certified by the governor. In pursuance of

the requisition it is the duty of the governor of the state in which the accused is found to issue his warrant and cause the accused to be arrested and delivered to the agent representing the executive of the demanding state. The accused may contest the validity of the extradition proceedings on habeas corpus. He may show that he is not charged with a crime in the demanding state, or that he is not a fugitive from the justice of the demanding state. These are jurisdictional facts, and if the accused can successfully controvert either, he is entitled to be discharged from custody. The question of whether a crime is charged against the accused in the demanding state is one of law, and to be ascertained from the requisition and the papers accompanying it: Ex parte Spears (Cal.), 22 Am. St. Rep. 341; Roberts v. Reilly, 116 U. S. 80; Munsey v. Clough, 196 U. S. 364. Whether the accused is a fugitive from the justice of the state demanding his return is one of fact, and, when controverted, to be ascertained and determined like any other question of fact. It is the duty of the demanding governor, and it will be presumed that he has performed that duty, to satisfy himself that a crime has been committed by the accused within his jurisdiction. If an indictment has been found or an affidavit made before a magistrate charging the crime, a copy thereof duly certified as authentic by the governor and accompanying his requisition, will be sufficient evidence, prima facie, that a crime has been charged against the accused in the demanding state.

On receipt of a requisition in proper form it is the duty of the governor of the asylum state, under the act of congress, to issue his warrant for the arrest of the accused. When the sufficiency of the executive warrant is contested on a writ of habeas corpus, it should disclose on its face: (1) That a demand by the executive has been made for the party in custody as a fugitive from justice, and that the demand is accompanied by a copy of an indictment or affidavit charging him with having committed a crime within the demanding state; (2) that the copy of such indictment or affidavit was certified as authentic by the governor of the state making the demand; (3) and that the person demanded is a fugitive from justice: Roberts v. Reilly, 116 U. S. 80; Ex parte Reggel, 114 U. S. 642. On the application for a release, it is not a question of

whether the offense is sufficiently set forth in the warrant, but whether the statement in the warrant shows that the accused has been charged with a crime against the law of the state from which he has fled, and for that purpose a general description in the warrant is sufficient : Brown's Case (Mass.), 17 Am. Rep. 114. The warrant is presumptive but not conclusive evidence that the person is a fugitive from justice : People v. Hyatt (N. Y.), 92 Am. St. Rep. 706 ; Hyatt v. People ex rel. Corkran, 188 U. S. 691 ; Munsey v. Clough, 196 U. S. 364. And in a general way the extradition warrant is prima facie evidence of the existence of every fact which the executive was obliged to determine before issuing it : In re Kingsbury, 106 Mass. 223 ; Illinois v. Pease, 207 U. S. 100. But the accused may show by competent evidence, as a ground for his release, that he is not a fugitive from the justice of the demanding state, and thereby overcome the presumption to the contrary arising from the face of the warrant : Illinois v. Pease, 207 U. S. 100.

If the jurisdictional facts authorizing the extradition of the accused appear from the papers, the court on a hearing in habeas corpus proceedings will not go into the merits of the case, or determine the guilt or innocence of the accused. It is the duty of the asylum state to protect the liberty of its citizens and not permit interstate extradition proceedings to be made a pretext for removing them to another jurisdiction for a purpose other than that within the intendment of the federal constitution. On the other hand, it is equally the duty of the state to aid in the punishment of crime committed in another state, by the prompt extradition of the guilty person found within its jurisdiction as a fugitive from justice. No state can be the asylum of a fugitive from justice, and hence it should promptly honor the requisition of a sister state for the extradition of a prisoner legally accused of committing an offense against the laws of that state. If the court on habeas corpus inquires into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding state, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals. The mandate of the constitution requires " a person charged in any state with a crime " to be delivered by the

asylum state to the state whose laws he has violated. That state alone can determine the guilt or innocence of the offending party. The theory and the intention of the constitutional and statutory provisions are that the offender shall be compelled to submit himself for trial to the courts of the state in which the offense was committed, and hence it would be usurpation of authority for the courts of another state to undertake to determine the question of his guilt in a habeas corpus proceeding. Assuming that the demanding state has complied with the requirements of the federal constitution and the act of congress in making the requisition for the accused, it would be equally an unconstitutional exercise of power for the court of the asylum state to inquire into the motives of the prosecution, instituted in conformity with the laws of the demanding state, and release the offender and thereby prevent his extradition for trial in the latter state. The only possible effect of permitting the motives of the private prosecutor to be shown on a habeas corpus extradition proceeding would be to show the guilt or innocence of the accused. If a person is guilty of an offense against the laws of a state, it is no defense for him to allege that the prosecution was inspired by improper motives. It very frequently happens that criminals are brought to punishment only by persons who have motives other than the vindication of the violated law; but it has never been held that such reason was sufficient to invalidate a conviction for a criminal offense. Good faith and courtesy require a state to honor the demand of a sister state for the return of a fugitive from justice. When, therefore, the executive of a state has issued a requisition in proper form for a person charged with a crime against the laws of that state, and the executive of the asylum state has honored the requisition and issued a warrant, regular on its face, for the arrest of the accused, it will be presumed that both executives have been duly satisfied of the existence of the jurisdictional facts necessary in extradition proceedings, and the court on habeas corpus should not refuse to recognize the validity of and enforce the warrant of the executive of the asylum state unless the accused clearly and satisfactorily shows that he is not a fugitive from justice within the meaning of the federal constitution and the act of congress.

This is a habeas corpus proceeding instituted in the court of quarter sessions of Philadelphia county to secure the release of Richard C. Flower who was held by the respondent by virtue of an extradition warrant issued by the governor of this state. The petition for the writ avers that Flower " is deprived of his liberty, unjustly as he apprehends, by reason of a requisition issued by the governor of the state of New York for some criminal or supposed criminal matter." No other facts or reasons why he should be discharged are set forth in the petition. The writ was granted by the court to which the respondent answered that Flower was held by virtue of a warrant issued by the executive of this state requiring Flower to be arrested and delivered into the custody of the agent of the state of New York to be taken back to the state from which Flower had fled, pursuant to a requisition of the governor of the state of New York. The warrant issued by the governor of this state recites that the governor of New York has represented to him that Flower stands charged with the crime of grand larceny, first degree, committed in the county of New York, state of New York, and has fled from justice in that state and taken refuge in the state of Pennsylvania, that he has demanded of the executive of this state that Flower be arrested and delivered to the agent of the state of New York, there to be dealt with according to law. The warrant further recites that the requisition " is accompanied by a copy of the indictment, which is certified as authentic by the said governor (of New York), and is now on file in the office of the secretary of the commonwealth." The relator offered to prove on the habeas corpus hearing that the prosecution was inspired by improper motives and that the extradition proceedings were not in good faith to secure the punishment for crime. The offer was refused. The relator was remanded and an exception was noted for him. An appeal was taken from the quarter sessions to the Superior Court, which affirmed the order of the quarter sessions in remanding the prisoner. From the judgment of the Superior Court, the relator has appealed to this court.

If an application had been made for the writ of habeas corpus to this court it would have been our duty on the hearing to have made the same investigation that the quarter sessions

did, and to have determined the legality of the extradition proceedings under which the relator was held, but we have no such duty on this appeal. The hearing before us is as an appellate court and not as a court of first instance. The proceedings are before us on a writ of certiorari, and it would have been called such prior to the act of 1889, which requires all appellate proceedings to "be taken in a proceeding to be called an appeal." While that act requires all appellate proceedings to be designated an appeal, this court on the hearing must necessarily observe the prior distinction between the writs which bring legal proceedings into the court for review. The act simply requires the appellate proceedings to be called an appeal, but it does not compel or require the appellate court to disregard, on the hearing, the prior distinction between the writs. An appeal in name may, therefore, be a writ of error or a certiorari in legal effect, and it is necessary, in every case, to look into the record, and determine at the outset of our examination whether what is called an appeal is such in fact, or is a writ of error or a certiorari : Rand v. King, 134 Pa. 641, 646. In a case of habeas corpus issued and heard by the court below, we have distinctly ruled that an appeal from the order in such cases has only the effect of a certiorari. In the case in hand, therefore, we must regard the writ as a certiorari and that only brings up for review the record in the case. Hence our authority must be confined to ascertaining the regularity of the proceedings of the court which heard the habeas corpus. Looking at that record, there can be no doubt of the regularity of the proceedings had before the quarter sessions. The petition for the habeas corpus simply averred that the relator was deprived of his liberty by virtue of the requisition of the governor of New York. It did not aver that the crime charged against him was inspired by improper motives or that he was not in the state of New York at the time when the offense is alleged to have been committed, or that he was not the defendant named in the warrant. As shown by the record, the relator admitted at the hearing that he was the person named in the warrant, and that he was in the state of New York at the time the crime was committed. The return to the writ disclosed that the relator was charged with a crime in the state of New York and

that a copy of the indictment, certified as authentic by the governor of that state, accompanied the requisition for Flower's extradition. It is not denied that he was found in this state and arrested here by virtue of the extradition warrant issued by the governor. He is, therefore, a fugitive from the justice of the state of New York: Roberts v. Reilly, 116 U. S. 80. The proceedings before the quarter sessions, as shown by the record, are legal and regular in every respect, and the facts thus disclosed show that the court was entirely right in remanding Flower to the custody of the respondent. On this writ, we are not permitted to determine whether the evidence offered by the relator's counsel at the hearing should have been received and considered by the quarter sessions. It is no part of the record. There is no way of making it a part of the record so as to have the refusal of the offer of the evidence reviewed by this court. The fact that the quarter sessions noted an exception and sealed a bill of exceptions will not authorize us to review the action of the court in declining to hear the evidence: Middleton v. Commonwealth, 2 Watts, 285. We must, therefore, affirm the order of the quarter sessions remanding the prisoner, and also the judgment of the Superior Court affirming that order.

But if the question was properly before us, we are clear that the quarter sessions was right in refusing to hear the evidence offered by the relator. The warrant disclosing that the extradition proceedings were in exact compliance with the constitution and laws of the United States, and it appearing that the relator was a fugitive from justice, the evidence offered would not have justified his release from custody if it had been received. It tended to show, as claimed by his counsel, that the relator was not guilty of the crime charged against him in the indictment, and that the prosecution was inspired by an improper motive. The quarter sessions of Philadelphia county was not the proper forum to determine either of these questions. The relator is charged with an offense against the laws of the state of New York, and the proper tribunal to determine his guilt or innocence is a court of that state. As said by Mr. Justice HARLAN in Appleyard v. Massachusetts, 203 U. S. 222, in a proceeding to extradite a prisoner for the crime of grand larceny, first degree, the same as alleged here

(p. 227): " It is the province of the courts of New York (where the crime was committed) to declare what its laws are, and to determine whether particular acts on the part of an alleged offender constitute a crime under such laws." Nor is it material that the relator alleges that the private prosecutor, instituting the criminal proceedings in New York, was inspired by malicious or otherwise improper motives. The prosecution is by the state of New York. The indictment alleges that a crime has been committed against the laws of that state, and demands the return of the relator to the state that he may be tried for the offense committed. The governor of the state of New York in making the requisition acts for the state, and not for the private prosecutor, and it has not been shown, and does not appear, that his action or that of the executive of this state, who issued the warrant for the relator's arrest, is not in good faith and for the purpose of the extradition of a person bona fide accused of a crime in the state of New York. In Pettibone v. Nichols, 203 U. S. 192, where fraud and bad faith between the governors of the demanding and asylum states were alleged, it was said by the supreme court of the United States (p. 203): " We pass by, both as immaterial and inappropriate, any consideration of the motives that induced the action of the governor of Colorado. This court will not inquire as to the motives which guided the chief magistrate of a state when executing the functions of his office." If, as alleged by the relator, the private prosecutor in New York instituted the criminal proceedings with bad motives, that may possibly be shown on the trial as affecting the issue being tried before the jury, but it cannot be introduced here because, as we have seen, the guilt or innocence of the relator is not a question to be determined on a habeas corpus in Pennsylvania, but by a court and jury in the state of New York where the crime is alleged to have been committed.

We need not consider or determine the constitutionality of the Act of May 24, 1878, P. L. 137, 2 Purd. (13th ed.) 1761. The relator was not restricted to the proof of his identity on the hearing before the quarter sessions, but was afforded every opportunity to show the illegality of the extradition proceedings and that he was not a fugitive from justice. In other words, he was given an opportunity to controvert the juris-

dictional facts which authorized the extradition proceedings, and that was all he was entitled to on a habeas corpus. The proceedings before the quarter sessions were conducted as though the act of 1878 had no existence, and, therefore, there is no ground on which the relator can ask this court to pass upon the constitutionality of the act.

It is to be regretted that the relator has been able by use of our judicial process to delay his return to the state of New York, and his consequent trial for the crime charged against him in that jurisdiction. He admits that he is the person named in the extradition warrant, and that he was in New York at the time the crime is alleged to have been committed. He does not allege that his return to New York is sought for religious or political reasons, nor that his indictment in that jurisdiction was prompted by such reasons. He does not claim that there is any prejudice existing against him in that state, or that he cannot have a fair and impartial trial in that jurisdiction for the crime charged there against him. His sole pretense for demanding a release from arrest and return to New York on the extradition warrant, as shown by his offers of evidence, is that the prosecution was not made in good faith and is for the purpose of collecting a debt. Conceding this allegation to be true, it simply goes to his guilt or innocence, and he manifestly must have that question adjudicated in the courts of the state against whose laws the crime is alleged to have been committed. Instead, therefore, of resisting a return to the state of New York to be tried for the offense he should, under the facts disclosed in the record, have voluntarily returned to that jurisdiction and demanded an immediate trial on the indictment. He is charged with grand larceny, a disgraceful and heinous offense, and if he be innocent, as he alleges, he should have submitted himself at once to the jurisdiction where the crime was alleged to have been committed. He is, and has been since his arrest, which is more than a year ago, within two hours of New York, where he can have a fair and impartial trial and his innocence declared by a court and jury of unquestioned jurisdiction. Yet, instead of seeking this opportunity to vindicate himself, he has, since the day of his arrest, invoked the aid of every court in this jurisdiction having cognizance of the matter, to prevent

his return to New York, and to defeat a trial on the merits of the crime charged against him. The facts of this case, as shown by the record, do not warrant such conduct by an innocent man, and unmistakably show that the relator should have been returned to New York without delay.

It must be distinctly understood that this commonwealth cannot be made an asylum for the criminal class of any state, domestic or foreign, and that when a member of that class seeks a refuge here, the processes of our courts may not be used to prevent his return to the state or country whose justice he has fled. Such rule should be strictly enforced in interstate extradition proceedings. The provisions of the federal constitution and the act of congress should be enforced by the states in good faith to effect the purpose intended, and no technical or formal objection to extradition proceedings should be allowed to avail the accused in evading a speedy trial in the demanding jurisdiction when there has been a substantial compliance with the constitutional and statutory requirements regulating such proceedings. The public welfare demands that crime committed against the laws of any state should be punished, and while each state should carefully guard and protect the liberty of its citizens, yet it should yield a willing compliance to the request of a sister state for the return of a fugitive from justice. This will carry out the manifest intention of the compact between the states, and tend to establish better and more harmonious relations between them. As correctly said by Mr. Justice Harlan in Appleyard v. Massachusetts, 203 U. S. 222, 227 : " The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for the purpose of securing a prompt and efficient administration of the criminal laws of the several States—an object of the first concern to the people of the entire country, and which each State is bound, in fidelity to the constitution to recognize. A faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the States."

The judgment of the Superior Court, affirming the order of the quarter sessions, is affirmed ; and the record is remitted to the quarter sessions with directions that the said Richard C. Flower forthwith surrender himself into the custody to which

he was remanded, and that the aforesaid order hereby affirmed and the governor's warrant referred to in this proceeding be fully carried into effect.