Commonwealth ex rel. Bucksbarg *v.* Good
(Commonwealth, Appellant).

558

Argued November 19, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Louis L. Kaufman,* with him *Artemas C. Leslie,* District Attorney, for appellant.

*Harry A. Estep,* with him *Harry I. Glick,* for appellee.

OPINION BY HIRT, J., May 19, 1948:

A request for the extradition of the relator from this State was made by the executive authority of the State of Ohio. Accompanying the request were authenticated excerpts from the records of the demanding state to the effect that relator had been convicted there of grand larceny and sentenced to serve a term of imprisonment of from one to seven years in an Ohio penitentiary. On a charge that he had escaped from confinement under

the sentence imposed, the Governor of this State honored the demand and issued a warrant for the arrest of relator as a fugitive from justice and his delivery to the respondent, a duly authorized agent of the demanding State. In this habeas corpus proceeding brought by relator, following his arrest, the lower court after hearing, discharged him from custody. The Commonwealth has appealed.

The facts are not in dispute. In April 1922, relator, then but 21 years of age, stole a quantity of brass from a scrap pile on the premises of his employer in Canton, Ohio. That the amount stolen was not large may be inferred from the fact that only $22 was realized from its sale. For this offense he was charged with grand larceny and was convicted by his admission of guilt. Shortly after sentence, and probably because of it, he suffered a nervous breakdown and was transferred from the penitentiary to an Ohio State hospital off the prison grounds. On his recovery, and before the expiration of his minimum sentence, he was employed by the authorities as a guard over a group of boys in a so-called "Juvenile Research Building" in the City of Columbus, not connected with the penitentiary. He lived in the building and when off duty was free to come and go as he pleased, except that he was obliged to be in his room before midnight. On a day in January 1923, little more than two months before the expiration of the term of his minimum sentence, he "walked away" from the building where he was employed and never returned. This, technically, was an escape from confinement under his sentence and amounted to a prison breach. After leaving Columbus he secured employment in a number of other cities in Ohio, and more than 25 years ago came to Pittsburgh where he has since lived. The State of Ohio seeks to compel the return of relator, at age 47, for an offense committed a quarter of a century ago. The Ohio authorities apparently did not take his departure seriously at the time, for by diligence, relator,

while working in Ohio, might have been located and promptly returned.

In 1930 relator married a widow with four young children and took them into his home in Pittsburgh. He reared these children to maturity as his own. They all did service in the late war. Two of them have married and have established homes of their own. The youngest is still living with his mother and the relator. Relator on coming to Pittsburgh, learned the carpenter's trade as an apprentice. Since then he has been steadily and profitably employed. About ten years ago he bought a house, which he still owns and occupies, in the Sheridan district of Pittsburgh as a home for himself, his wife, and his adopted family. He has not been in conflict with the law since the incident in Ohio in 1922. Ten of his neighbors, who know him well, of unimpeachable standing including public officers, and a member of the executive board of relator's labor union, have attested to his good reputation and exemplary conduct ever since he came to Pittsburgh. An employer testified that he is a good workman, honest and trustworthy. His marriage has been successful and he has been a good father to his wife's children; he has none of his own. The witnesses agree that he at all times has been highly respected by his fellow workmen and in the community in which he lives.

Unhappily, the above facts have no legal significance at this stage of the proceeding. An appeal from an order of a court on habeas corpus, following the arrest of a fugitive in an extradition proceeding, is in the nature of certiorari. The scope of our review therefore, is definitely limited and we may inquire only whether the court had jurisdiction of the subject matter and whether the proceedings are regular and in conformity with law. *Com. ex rel. Mattox v. Supt. of Co. Prison,* 152 Pa. Superior Ct. 167, 170, 31 A. 2d 576. The lower court had jurisdicion under §10 of the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS 191.10. That

section specifically provides for a hearing by the court in a habeas corpus proceeding when brought by an alleged fugitive to test the legality of his arrest.

The Habeas Corpus Act of July 1, 1937, P. L. 2664, 12 PS 1892, provides that a judge granting the writ may inquire into the facts of the case. But even where one has fled the demanding state, to escape arrest and trial on a criminal charge, that Act does not empower a court on habeas corpus in an extradition proceeding to inquire into the guilt or innocence of the accused. That is solely the function of the courts of the demanding state. *Com. ex rel. Mattox v. Supt. of Co. Prison,* supra. Any other construction of the Habeas Corpus Act would be inconsistent with the Uniform Criminal Extradition Act, supra, which in §20, 19 PS 191.20, specifically provides that the "guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the Governor, or in any proceeding after the demand for extradition . . ." A hearing on habeas corpus is such proceeding as is contemplated by this section of the Act. And on habeas corpus in the present case the court was without authority to inquire into the facts of the case further than to determine whether relator was an escaped convict and a fugitive from justice of the demanding state. Relator's identity has been established. He committed a crime and was sentenced in the demanding state. He technically at least is an escaped convict. The documents of demand are sufficient. He therefore is a fugitive from justice of the State of Ohio, (*Com. ex rel. Davis v. Dye,* 161 Pa. Superior Ct. 74, 53 A. 2d 750) subject to extradition on the warrant issued by the Governor of this Commonwealth.

The lower court fell into error by inquiring into the merits of the case. Its conclusion, however reasonable, that relator had expiated his offense and that "substantial justice could only be done by discharging" him, does not supply legal ground for the order. The *Mattox* case, supra, on which the court relied, cannot serve as a precedent for the discharge of the relator in this case.

There the accused was threatened with violence and the denial of a fair and impartial trial in the demanding state. Here the sole reason advanced by relator is that he has been a law abiding citizen since his escape. The order offends against the Uniform Criminal Extradition Act as well as Article IV, §2, Cl. 2, of the Constitution of the United States. The controlling principle is stated in *Commonwealth v. Supt. of Co. Prison*, 220 Pa. 401, 69 A. 916 thus: "No state can be the asylum of a fugitive from justice, and hence it should promptly honor the requisition of a sister state for the extradition of a prisoner legally accused of committing an offense against the laws of that state. If the court on habeas corpus inquires into the merits of the charge against the prisoner or into the motives which inspired the prosecution in the demanding state, it exceeds its authority under the constitutional and statutory provisions regulating the extradition of criminals". Cf. *Reed v. Colpoys, U. S. Marshal*, 99 F. 2d 396, which is parallel with the present proceeding on the facts. To the suggestion that the accused should be discharged on equitable considerations, the court there said: "We cannot and should not usurp that power by interfering with extradition properly requested".

Of course we are sympathetic to the relator in the predicament which he finds himself because of an error of judgment. It is not for us to inquire into the reason which prompted extradition in this case. But we may not assume that humane considerations stop at the State line and that relator will not be justly dealt with according to his desserts by the authorities in Ohio. His rehabilitation and his good conduct during the years in Pennsylvania undoubtedly will be arguments in his favor in his time of need.

The order is reversed and the record is remitted to the lower court with the direction that the relator surrender himself into the custody from which he was discharged and that the Governor's order in this extradition proceeding, be carried into effect.