Commonwealth ex rel. Raucci, Appellant, *v.* Price.

Argued October 8, 1962.  Before Bell, C. J., Musmanno, Jones, Eagen, O'Brien and Keim, JJ.

*Albert A. Fiok,* with him *M. Barney Cohen,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Louis Abromson,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 13, 1962:

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying a petition for a writ of habeas corpus in an extradition proceeding and ordering appellant, Louis Raucci, to be turned over to the custody of the appropriate authorities of the State of Ohio.

On July 16, 1959, Ruth Jane Whitney, a courier for the Niles Bank of Niles, Ohio, was abducted and robbed of $41,000. Sixteen months after the commission of the crime—on November 13, 1961—Raucci was arrested in Pittsburgh on a governor's warrant and an extradition request originating in the State of Ohio. Raucci was charged with the abduction of Ruth Jane Whitney for the purpose of extortion and robbery. Availing himself of Section 10 of the Uniform Criminal Extradition Act,[1] Raucci on the day of his arrest petitioned the Court of Common Pleas of Allegheny County for a writ of habeas corpus, averring therein that he was being held in custody on a void extradition warrant and alleging that he was not in Niles, Ohio, at the time of the commission of the crime.

A hearing was held pursuant to this petition. The Commonwealth called as its first witness the victim, Ruth Jane Whitney, who testified that she had identified Raucci at a police-lineup in Pittsburgh as the as-

---

[1] Act of July 8, 1941, P. L. 288, §1 et seq., 19 P.S. §191.1.

sailant and as the person named in the indictment. She likewise identified him in court from the stand and then testified as to his appearance and dress at the time of the crime. The Commonwealth also produced William Edward Parker who had also identified Raucci at the Pittsburgh police-lineup and then positively identified him in open court as the person he had seen commit the crime. Parker testified as to Raucci's appearance and dress on the day of the crime. Seven witnesses who were either members of his family or close friends, were called by Raucci. They testified that he was not in Niles, Ohio, on the day the crime was committed, but rather was at the site of his employment in Braddock, Pennsylvania. Raucci himself testified that he was not in Niles, Ohio, on July 16, 1959. Raucci does concede, however, that Niles, Ohio, may be reached from the Pittsburgh area by automobile in approximately one and one-half hours.

At the conclusion of the hearing, the court below entered an order denying the petition for a writ of habeas corpus and directing that Raucci be turned over to the Ohio authorities, but that, pending an appeal to this Court, he be released upon posting a supersedeas bond. The opinion of the court below was predicated on the conclusion that the identification of Raucci as the assailant and as the person named in the Ohio indictment by the two Commonwealth witnesses was sufficient to justify his extradition and that Raucci's evidence did not contradict this positive identification evidence.

Upon denial of the petition, an appeal was taken to this Court. While the appeal was pending, Raucci petitioned the Court of Common Pleas of Allegheny County averring that the Commonwealth's witnesses had given to the police authorities information which directly conflicted with the testimony produced at the hearing and which materially affected the crucial ques-

tion of identity. Raucci asked that the record be opened for the taking of additional testimony on the issue raised by this newly-discovered evidence. The district attorney did not object to this request and joined with Raucci in a petition to this Court requesting that the record be remanded for the taking of additional testimony and that this appeal, pending the hearing, be continued. We granted that petition.

A second hearing was held and Raucci there attempted to introduce the testimony of one Harold Byland through whom Raucci offered to show by way of photographs "the physical aspects surrounding the act". Specifically, this witness was to testify to "distance and directions" at the location of the crime concerning which the victim, Ruth Jane Whitney, had testified at the first hearing. The court excluded this testimony. A second witness, one Eugene Stout, was called and through him Raucci offered to show that, although he saw the person who committed the robbery, he could not positively identify that person as Louis Raucci. This testimony was excluded on the ground that it did not affect the credibility of the Commonwealth's witnesses. A third witness was produced, one Anthony Marsico, a sergeant of police in Niles, Ohio, who acted as Ruth Jane Whitney's bodyguard at the time the abduction and robbery occurred, and, through Marsico, Raucci offered to show that this eyewitness was not able to identify Raucci as the assailant. Counsel for Raucci argued that the above evidence materially affected the question of identity but the Commonwealth's objections to its admission were sustained on the ground that the hearing was limited to those issues raised in the petition concerning statements made by the Commonwealth witnesses inconsistent with their testimony at the original hearing.

Subsequent to the second hearing, the court below filed an opinion stating that the Commonwealth's wit-

nesses on the matter of identification had not been impeached at the second hearing held, at Raucci's instance for the express purpose of challenging the credibility of these witnesses. The court, thereupon denied the petition for a writ of habeas corpus and ordered that Raucci be delivered to the Ohio authorities. From this order the appellant has appealed.

This appeal raises three issues: (1) did the court err in ignoring evidence produced by Raucci which evidence allegedly disproved identity; (2) did the court err in refusing to hear certain testimony offered at the second hearing; (3) does an alleged defect in the Ohio indictment preclude Raucci's extradition?

Our scope of review in extradition cases is restricted. By the terms of the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, §1 et seq., 10 P.S. §191.1 et seq., the courts of an asylum state may not determine the guilt or innocence of the party sought to be extradited. The courts of an asylum state will order extradition only if (1) the subject of the extradition is charged with a crime in the demanding state; (2) if the subject of extradition is a fugitive from the demanding state; (3) if the subject of the extradition was present in the demanding state at the time of the commission of the crime; (4) if the requisition papers are in order. All of these elements must be present: *Commonwealth ex rel. Pacewicz v. Turley,* 399 Pa. 458, 160 A. 2d 685; *Commonwealth ex rel. Dronsfield v. Hohn,* 390 Pa. 434, 135 A. 2d 757; *Commonwealth ex rel. Hatton v. Dye,* 373 Pa. 502, 96 A. 2d 127; *Commonwealth ex rel. Henderson v. Baldi,* 372 Pa. 463, 93 A. 2d 458.

Section 20 of the Uniform Criminal Extradition Act is particularly applicable on this appeal: "The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the Governor, or in any proceeding after the demand for

extradition accompanied by a charge of crime in legal form as above provided [Section 3] shall have been presented to the Governor, except as it may be involved in *identifying the person held as the person charged with the crime.*" (Emphasis supplied). The purpose of prohibiting any inquiry into the guilt or innocence of the accused is to restrict such inquiry to the state which has jurisdiction of the crime charged: *Commonwealth ex rel. Bucksbarg v. Good,* 162 Pa. Superior Ct. 557, 58 A. 2d 842; *Commonwealth ex rel. Hatton v. Dye,* supra.

The record shows that the Commonwealth's two witnesses, at the first hearing, unqualifiedly identified Raucci as the person who committed the crime and the person who was named in the Ohio indictment. Subsequent to the first hearing, Raucci submitted the following petition to the court below: "Subsequent to the filing of said appeal [to this Court], upon further investigation based upon facts which your petitioners did not have . . . at the time of the hearing before your Honorable Court, it was ascertained that *the Commonwealth witnesses gave information to police authorities and others which are in direct conflict with the testimony produced at said hearing, materially affecting their credibility and materially affecting the question of identity.*" (Emphasis supplied). Raucci further averred that: "The evidence subsequently discovered will cast serious doubt on the *question of identity* which, in extradition cases, must be established with reasonable certainty." (Emphasis supplied). In his petition to this Court, Raucci averred substantially the same matters. The Commonwealth did not oppose Raucci's petition. The second hearing having been granted, Raucci first attempted to substantiate the allegations in his petition by showing photographs of the exact location of the crime. This offer in no way, even remotely, related to the "question of identity".

An offer was then made to produce a witness in whose opinion Raucci was not the assailant. A third witness was to show that, although he saw the assailant at close range, he was unable to identify Raucci as that person. Because none of this evidence supported the petition which alleged that certain additional newly-discovered evidence would impeach the credibility of the Commonwealth's identifying witnesses, Raucci was not permitted by the court below to introduce the testimony of these three witnesses. The validity of these rulings is at issue.

We repeat, Section 20 of the Uniform Criminal Extradition Act provides: "The guilt or innocence of the accused as to the crime of which he is charged *may not be inquired into* by the Governor, or in any proceeding after the demand for extradition . . . except as it may be involved in *identifying the person held as the person charged with the crime*." (Emphasis supplied). Patently, this section permits an inquiry into the identification of the *person charged with the crime* and not the *person guilty of the crime*. It simply requires the identification before the court of the asylum state of the person charged in the foreign indictment or named in the information. This is the clear construction of the statute's words as illustrated by *Commonwealth ex rel. Dronsfield v. Hohn,* 390 Pa. 434, 437, 135 A. 2d 757, wherein it was said: "The relator is entitled to be discharged by Courts of the asylum state if his identity is not established, because in such a case he would not be the person who was charged with the crime in the demanding state . . . : [citing cases]." This construction has been termed "fundamental" by Mr. Justice Mus-MANNO in his dissent in *Commonwealth ex rel. Pacewicz v. Turley,* supra (pp. 474-5), in which he states: "But before there can be an inquiry as to whether the relator was in the demanding state when the alleged crimes were committed there has to be a determination

as to whether the relator is the person charged in the extradition papers."[2]

At the first hearing the two Commonwealth witnesses positively identified Louis Raucci as the person who had committed the crime and as the person named in the Ohio indictment. Raucci cross-examined these witnesses and did not impeach their identification. This Court has said in *Commonwealth v. Kloiber*, 378 Pa. 412, 424, 106 A. 2d 820: "Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of fact' ": [citing cases]. The lower court based its first opinion which denied the writ of habeas corpus upon its acceptance of the credibility of the two Commonwealth eyewitnesses. The court below is the judge of credibility and this Court has no power to arbitrarily question its determination of credibility. The requisites of the statute have been fulfilled and Raucci has been identified by clear and positive proof as the person charged with the crime and he is, therefore, amenable to extradition. At issue is not his guilt or innocence of the crime charged, but only the positive identification of him "as the person *charged* with the crime."

If, in fact, there was newly-discovered evidence which would impeach the credibility of the Common-

---

[2] The dissent in *Pacewicz* was based upon the ground that, in the opinion of the dissenting justices, the defendant was not given an opportunity to cross-examine the identifying witness and thereby test his credibility. In the present appeal, Raucci was given the broadest latitude in cross-examining the Commonwealth's witnesses and, despite this thorough cross-examination, their testimony remained unimpeached.

wealth witnesses, it would be offensive to due process if this evidence were not admitted into the record. Despite, however, the averments in Raucci's petition, the offered evidence in the second hearing in no way impeached the credibility of the Commonwealth witnesses and, at best, it merely presented a difference of opinion as to whether or not Raucci was the assailant of July 16, 1959. Not one of the three witnesses at the second hearing was prepared to state that Raucci was not, in fact, the "person charged with the crime." The testimony offered at the second hearing clearly qualifies as alibi evidence, which is assuredly, of no importance in extradition proceedings. This evidence falls directly within the statement in *Pacewicz* (p. 464) : "A hearing of the witnesses whose presence relator's counsel desired would have been of importance on the question of relator's guilt or innocence of the commission of these crimes and not his amenability to extradition." It is further evident that Raucci's counsel fell unwittingly into that error which likewise appeared in *Pacewicz* (p. 463) : "It is evident that relator's counsel, under the guise of a writ of habeas corpus, was attempting to secure a determination of relator's guilt or innocence of the offense with which he was charged . . . ."

We are, therefore, constrained to hold that the evidence at the second hearing was irrelevant to the issue of *identity* as that term is used in the Uniform Criminal Extradition Act. There was adequate identification of Raucci as "the person *charged* with the crime." If this identification could be impeached, Raucci had the unquestioned right to do so. However, his offer of evidence at the second hearing was not designed to impeach the identification witnesses but was in the nature of alibi evidence. Alibi evidence will be of cardinal importance when Raucci is put to trial on the issue of his guilt or innocence of the crime in the demanding state. It is, however, rendered wholly irrelevant

in extradition proceedings in the asylum state by Section 20 of the Uniform Criminal Extradition Act. The lower court, therefore, did not err in accepting as credible the Commonwealth's evidence and excluding as irrelevant any evidence which did not relate directly to the question of identity.

Raucci, further, alleges as error the lower court's acceptance of the Ohio extradition papers, one of which Raucci claims is technically defective and is therefore in violation of Section 3 of the Uniform Criminal Extradition Act. At the outset of the first hearing, the Commonwealth moved to introduce into evidence the following documents: the indictment of the Trumbull County, Ohio, grand jury, the requisition papers from the Ohio Prosecuting Attorney, the demand for extradition executed by the Governor of Ohio, and the warrant of arrest by the Governor of Pennsylvania. Raucci objected specifically to the indictment.

Ohio law requires the foreman of a grand jury to indorse an indictment with the word "A True Bill" and, thereafter, subscribe his name as foreman. The indictment which accompanied the Ohio extradition papers was indorsed "Indictment Found" rather than "A True Bill". There also was no subscription of the foreman's name in his own hand.

It has been held under the Uniform Criminal Extradition Act that in an interstate rendition proceeding the asylum state has no authority to pass on the technical sufficiency of an indictment. This is a matter exclusively within the authority of the demanding state: *State v. Phillips,* 62 N. J. Super. 70, 162 A. 2d 113, affirmed 34 N. J. 63, 167 A. 2d 175. " 'The warrant of the Governor of the Commonwealth [Mass.] is prima facie evidence, at least, that all necessary legal prerequisites have been complied with, and, if the previous proceedings appear to be regular, is conclusive evidence of the right to remove the prisoner to the

state from which he had fled.' ": *Harris, Petitioner,* 309 Mass. 180, 34 N.E. 2d 504, 507. It is hornbook law that a governor's extradition warrant is prima facie evidence that all legal requirements have been complied with: *Munsey v. Clough,* 196 U. S. 364, 25 S. Ct. 282, 49 L. Ed. 515; *People of State of Illinois ex rel. McNichols v. Pease,* 207 U. S. 100, 28 S. Ct. 58, 52 L. Ed. 121; *Hogan v. O'Neill,* 255 U. S. 52, 41 S. Ct. 222, 65 L. Ed. 497. In *Commonwealth ex rel. Mills v. Baldi,* 166 Pa. Superior Ct. 321, 70 A. 2d 439, it was stated: "Where, in such proceeding, the *executive warrant* and the requisition in the extradition proceeding are introduced in evidence, a prima facie case is made out." In accord are: *Commonwealth ex rel. Taylor v. Superintendent of Philadelphia County Prison,* 382 Pa. 181, 114 A. 2d 343; *Commonwealth ex rel. Crist v. Price,* 405 Pa. 384, 175 A. 2d 852; *Commonwealth ex rel. v. Superintendent of Philadelphia County Prison,* 220 Pa. 401, 69 A. 916. We are bound to hold, therefore, that if Raucci desires to attack the technical insufficiency of the indictment, he must do so in Ohio for the reason that the indictment is prima facie valid in the courts of this Commonwealth.

Raucci raises the further question that, although he objected to the introduction of the extradition papers, the court deferred ruling on their admissibility and, in fact, never made a *specific* ruling with regard to the objection. While the exhibits were never admitted formally into evidence, the court below did treat these papers as though they had been admitted into evidence and referred to them in its opinion. *Pacewicz,* supra, controls. In *Pacewicz,* the Commonwealth moved to place the extradition papers into evidence without the relator's objection. The court and all interested parties *understood* that all these documents had been received into evidence. The court in its opinion referred to each document. In the present matter Raucci ob-

jected specifically to the admission of the Ohio indictment and the court *by implication* ruled on this objection at the conclusion of the two hearings in its separate opinions by ordering Raucci's extradition and thereby honoring the extradition documents. The court would not have discussed the respective merits of the testimony of Raucci's and Commonwealth's witnesses if it did not in the first instance, by implication, accept the extradition papers to be valid and hence admissible.

There is present in the case at bar a conjunction of the four requisites which will justify extradition under the Uniform Criminal Extradition Act. The extradition papers clearly charge that Louis Raucci committed a crime in the State of Ohio and further charge him as a fugitive from that State. Credible witnesses have identified him as the person charged in the indictment and as being, in fact, the perpetrator of that crime, thereby placing Raucci in the demanding state at the time of the commission of the crime. This Court is bound to give prima facie validity to the papers demanding Raucci's extradition to the Ohio authorities.

For the reasons above assigned, the order is affirmed.

Mr. Justice MUSMANNO dissents.