## Commonwealth ex rel. Horn v. Sostar

Before Shughart, P. J., and Jacobs, J.

*Harold S. Irwin, Jr.*, for relator.

*Richard C. Snelbaker*, District Attorney, for Commonwealth.

SHUGHART, P. J., July 8, 1964.—A warrant issued by the Governor of the Commonwealth on the application of the Lieutenant and acting Governor of New York was served on the relator on May 28, 1964. The warrant was served at the Cumberland County Prison where Horn was serving sentences imposed by the quarter sessions court of this county. On the same date, relator was brought before the writer of this opinion pursuant to section 10 of the Act of July 8, 1941, P. L. 288, 19 PS §191.10, which is officially known as the Uniform Criminal Extradition Act. At this time he was represented by counsel who requested

that an opportunity be afforded to file an application for a writ of habeas corpus. The request was granted and an application was filed on June 3, 1964. A hearing was held June 11, 1964, at which testimony was taken. Legal questions were presented by the testimony, and at the request of counsel and the district attorney an opportunity was afforded to prepare briefs and the matter was orally argued before both judges of this court on June 23, 1964. The matter is now before us for decision.

At the hearing on the application for the writ, Kevin B. Finn, a detective of the Police Department of Nassau County, State of New York, identified relator as the person under indictment in the State of New York and as the subject of the extradition warrant. The testimony disclosed that Horn was arrested in Nassau County on three charges on April 5, 1963. The charges were driving an unregistered motor vehicle, assault in the second degree and criminally possessing a pistol. On the vehicle code violation, Horn plead guilty and was sentenced to serve the time he had been in prison until the date of sentence. On the latter two charges he was taken before a judge of the District Court of the First District of Nassau County and after hearings there orders were entered on April 16th and April 18, 1963, discharging relator. Despite the discharge, as provided by the laws of New York State: People ex rel. Hirschberg v. Close, 1 N.Y. 2d 258; an indictment charging Horn with "criminally possessing a pistol as a felony" was presented to the Grand Jury of and for Nassau County and a true bill found thereon on June 4, 1963.

Horn did not contradict the testimony of Detective Finn, but he testified that following his final discharge after the felony examination he left the State of New York and came to Harrisburg, Pennsylvania, on April 21, 1963. Later he returned to New York to complete

painting a church but again left New York and came to this area on May 6, 1963, and never thereafter returned to New York State. He was arrested here in Cumberland County on August 24, 1963, on a charge of issuing worthless checks. He entered a plea of guilty to this charge and was serving the sentence imposed at the time the extradition warrant was served. After service of the latter warrant, he was placed on parole on May 28, 1964, and since that date has been held pending disposition of this application for a writ of habeas corpus.

Relator contends that when he left the State of New York all charges against him had been dismissed and that he has not been in the State since indictment and therefore he is not a "fugitive from justice" and not subject to extradition.

Provisions for the removal of persons charged with crimes from one jurisdiction to another existed under article IV of the Articles of Confederation between the 13 colonies. This language was substantially embodied in section 2, article IV, of the Constitution of the United States, which provides, inter alia, as follows: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Because of the belief that the provisions of the Constitution were not self-executing, chiefly for the lack of machinery for its execution, Congress passed an act in 1793, which has been brought forward as sections 5278 and 5279 of the U. S. Revised Statutes of 1875, 18 U. S. C. A. §§662, 663, 18 U. S. C. A. §§3182, 3194 and 3195.

Section 5278 of the Revised Statutes, supra, provides, inter alia, "Whenever the executive authority

of any State or Territory demands any person as a *fugitive from justice*, of the executive authority of any state, district or territory to which such *person has fled*, and produces a copy of an indictment found . . . the executive authority of the State, District or Territory to which such *person has fled* shall cause him to be arrested and secured, . . . and shall cause the fugitive to be delivered to such agent when he shall appear. . . ." (Italics supplied.)

All interstate extradition proceedings of fugitive criminals are based upon the United States Constitution and the Federal law referred to above. There has never been any substantial change in the Act of 1793, but it has come to be recognized that the several States had authority to provide machinery for applying the extradition law in respect to matters not covered by the act of Congress. As a result of the power resting in the States, the States passed diversified legislation which together with diverse judicial decisions of the courts caused considerable difference in the law of extradition throughout the United States. This led to the preparation of a uniform act governing extradition. This act, known as the Uniform Criminal Extradition Act, was adopted in the State of New York in 1936, and in Pennsylvania by the act of July 8, 1941, P. L. 288, 19 PS §§191.1-191.31.[1]

Section 2 of the Uniform Act adopted in this State in 1941, supra, provides, inter alia, that subject to the provisions of the act, the Constitution of the United States, and the acts of Congress ". . . it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other State of the United States any person charged in that State with treason, felony or other crime, who has *fled*

---

[1] For a history of extradition leading to the development of the Uniform Criminal Extradition Act, see Uniform Laws Annotated Volume 9, Miscellaneous Acts, page 259, et seq.

*from justice* and is found in this State." (Italics supplied.)

Section 3 of the Uniform Act likewise provides that no demand for extradition shall be recognized unless it is alleged in writing by the demanding State that the accused was present in the demanding State at the time of the commission of the alleged crime and ". . . that thereafter he fled from the state, . . ."

Relator contends that since he left New York when the charges against him had been dismissed, he had not *"fled from justice"* and is therefore not subject to extradition.

"The courts of an asylum state will order extradition only if (1) the subject of the extradition is charged with a crime in the demanding state; (2) if the subject of extradition is a fugitive from the demanding state; (3) if the subject of the extradition was present in the demanding state at the time of the commission of the crime; (4) if the requisition papers are in order. All of these elements must be present." [Citations omitted]: Commonwealth ex rel. Raucci v. Price, 409 Pa. 90, 95.

No case has been cited to us nor has our research revealed any in which the courts of this State have passed upon the question before us. "The decided weight of authority is to the effect that the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding State is immaterial and that the courts of an asylum State will not consider such elements in an extradition proceeding, but will be satisfied by a simple showing that having, within the demanding State, committed that which by its laws constitutes a crime, when the alleged fugitive is sought to be subjected to its criminal process to answer for his offense he has voluntarily left its jurisdiction and is found within the asylum state. . . .": 22 Am. Jur., Extradition, §23; Commonwealth v.

Hare, 36 Pa. Superior Ct. 125; Commonwealth ex rel. Flower v. Superintendent, Philadelphia County Prison, 220 Pa. 401.

The phrases "flee from justice," "fugitive from justice," and "to which such person has fled" used in the United States Constitution and in the Federal statutes have been given a different meaning by the courts than that connoted by common usage.

In the case of Bassing v. Cady, 208 U.S. 386, Bassing was charged with a crime in New York and was extradited from Rhode Island to answer to the charge. After he had entered a plea to the indictment, following one or two continuances, the district attorney's motion to dismiss the indictment for insufficient evidence was sustained. Bassing then returned to the State of Rhode Island. Shortly thereafter Bassing was reindicted for the same offense and a second extradition warrant was served on him in Rhode Island. Bassing applied for a writ of habeas corpus on the ground that he was not a fugitive from justice within the meaning of article IV, sec. 2, of the Constitution of the United States and section 5278 of the Revised Statutes. In dismissing this contention, Justice Harlan said, at page 392: "So far as the record shows it did not appear by proof that the accused was not in New York at the time the crime with which he was charged was committed. If he was in New York at that time . . . and thereafter left New York, no matter for what reason or under what belief, he was a fugitive from the justice of that State within the meaning of the Constitution and laws of the United States. These views are in accord with the adjudged cases. . . . He was none the less such fugitive, within the meaning of the Constitution and laws of the United States, because after the dismissal of the first indictment he left New York and returned to Rhode Island with the knowledge of or without objection by the New York authorities."

In Grogan v. Welch, 55 S. Dak. 613, 227 N.W. 74 (1929), Grogan was arrested with two others in Michigan on a charge of larceny of a car in North Dakota. He was extradited and returned to North Dakota, where he was arraigned. At the arraignment one of the defendants assumed entire guilt for the offense and, on motion of the district attorney, the criminal proceedings against Grogan were dismissed and he was discharged from custody. With the knowledge and approval of the district attorney, he returned to his home in South Dakota. The day after his release he returned to his home. Thereafter his alleged accomplice was brought before the court for sentence on his plea of guilty. At this time he repudiated the confession of entire guilt and asserted that Grogan and the other party were equally guilty and actively participated in the larceny. The district attorney thereupon swore out a new complaint against Grogan and caused a warrant to be issued thereon. Grogan, as the relator in this case, contended that he had no knowledge of the second complaint when he left North Dakota. The court followed the Bassing case, supra, and held that motive, mission, or purpose of the person for leaving the State was immaterial and Grogan was surrendered to the State of North Dakota.

The rule enunciated in the foregoing cases is predicated upon the knowledge that a contrary result would render extradition impossible in many cases and in others inefficient and burdensome, because in many situations the State would be powerless to show conscious flight from justice. The present case is eloquently illustrative of the effect of a contrary rule. Horn was charged with a crime in New York but discharged after a felony examination on April 18, 1963. He testified that he left New York on May 6, 1963, and did not return to New York State. In part he was supported by the testimony of an accomplice to the alleged

crime. It is quite possible that the State of New York could not offer proof of Horn's presence in New York after the indictment even if he had in fact been there. Horn is deeply interested in the outcome of the case and he is under sentence here for a crime in the nature of crimen falsi, both factors which affect his credibility, yet if motive in coming to Pennsylvania were a factor to be considered in determining whether he was a fugitive, he could not be extradited.

Neither of the cases cited were based upon the Uniform Extradition Act. This act employs the same wording "has fled from justice" as that employed in the Constitution of the United States and in the Federal Statute. There is nothing in the Uniform Act to indicate that the legislature intended the words in the Uniform Act to receive a different interpretation than that given to the same wording in the Constitution of the United States and in the Federal Statute. We are therefore bound to give them the same construction as that given by the Supreme Court of the United States: Article IV, sec. 52 (4) of the Act of May 28, 1937 P. L. 1019, 46 PS §552.

We therefore hold that the fact no charges had been filed against him when he left the State of New York is immaterial to the determination of whether he has in fact "fled from justice" in New York State. No other objections raised at the hearing were present at the argument or covered in the brief.

Since the record shows that Horn is charged with a crime in New York State and is now in this State and all of the papers are in proper order, he is subject to extradition.

### Order of the Court

And now, July 8, 1964, at 9 a.m. (EST), for the reasons given in the foregoing opinion, relator's application for a writ of habeas corpus is denied and it is directed that he be delivered into the custody of Kevin

B. Finn, duly appointed agent of the State of New York, who shall convey said Dale I. Horn to the County of Nassau, State of New York, there to be dealt with according to law.