# Commonwealth ex rel. Arnold v. Hendrick

*Oscar N. Gaskins*, for petitioner.

*Roger F. Cox*, for respondent.

SPAETH, J., February 20, 1969.—

### NATURE AND HISTORY OF THE CASE

This is an extradition proceeding.

The subject of the proceeding, Leonard Arnold, was arrested in Philadelphia on April 17, 1967. As a result of the arrest, the Philadelphia police obtained information that caused them to suspect that Arnold was wanted in Atlanta, Ga. They called the Atlanta police and said that Arnold was in custody in Philadelphia. Arnold was wanted in Georgia, where he had been indicted for assault with intent to murder and robbery (Bills nos. 91196 and 91197, Fulton County, Ga., January 1967). The Georgia authorities sent a fugitive warrant to the Detention Center in Philadelphia, which marked its records on Arnold, "Detain and hold"; and the Governor of Georgia executed and had

presented to the Pennsylvania authorities a warrant demanding Arnold's return to Georgia.[1]

In June 1967, Arnold was indicted on the charges for which he had been arrested on April 17, 1967. However, on August 29, 1968, incident to a motion to suppress evidence, the Hon. Herbert S. Levin held that the arrest had been illegal.[2]

On October 8, October 21, and December 13, 1968, the extradition proceeding came before this court.

### FACTS

The State of Georgia's demand for Arnold was supported by the testimony of Mrs. Agnes Williams and Officer H. G. Bailey. Mrs. Williams testified that she has known Arnold for many years and that in January 1967, he came to her home and robbed her husband, Leroy Williams, of $2,700, a watch and a ring, and, during the robbery, shot her in the foot. Officer Bailey, an investigator from the Office of the Solicitor General of the Atlanta Judicial Circuit, testified that, according to the Atlanta police report, Leroy Williams had reported the robbery on January 23, 1967, at approximately 12:01 a.m. Arnold did not challenge the testimony of Mrs. Williams and Officer Bailey.

### DISCUSSION

Arnold claims that he was identified as being wanted in Georgia as a direct result of his arrest in Philadelphia. This appears to be so. Arnold further

---

[1] This statement of the events that followed the call by the Philadelphia police to the Atlanta police is based upon a statement to the court by counsel for Arnold. Counsel said he was speaking from recollection only. However, the assistant district attorney, who presumably has access to the relevant records, has not disputed the accuracy of counsel's recollection.

[2] Judge Levin filed no opinion; the statement of his holding is based upon a statement to the court by counsel for Arnold, and not disputed by the assistant district attorney.

claims that since his arrest in Philadelphia was illegal, the authority for his detention and, with it, the extradition proceeding, must be held invalid as the "fruit of the poisonous tree" under the principles enunciated in Silverthorne Lumber Company, Inc. v. United States, 251 U. S. 385 (1920), and Wong Sun v. United States, 371 U. S. 471 (1963).

It is doubtful that the doctrine of the "fruit of the poisonous tree" applies to extradition proceedings.

Article 4, sec. 2, cl. 2, of the United States Constitution provides that:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

To effectuate this mandate, the Pennsylvania legislature has enacted the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS §191.1, et seq. (1964), and the present proceeding is a habeas corpus proceeding under section 10 of that act: Id. §191.10. Because of the nature of extradition, the scope of such a proceeding is limited. Thus:

". . . extradition should be ordered if: (1) the extradition papers are in order; *and* (2) the subject of the extradition is charged with a crime in the demanding state; *and* (3) the subject is a fugitive from the demanding state; *and* (4) the subject of the extradition was in the demanding state at the time the crime was committed": Commonwealth ex rel. Banks v. Hendrick, 430 Pa. 575, 577, 243 A.2d 438, 439 (1968).

This court has been unable to find a case in which extradition has been challenged for the reason asserted in the present case. However, in view of the constitutional mandate concerning extradition, and in view of

the fact that extradition does not itself constitute authority for the continued confinement of a person extradited, this court holds that the doctrine of the "fruit of the poisonous tree" does not apply to extradition proceedings. Although the precise issue raised by this case has not been decided by the Pennsylvania Supreme Court, it appears that the following cases support this holding: Commonwealth ex rel. Banks v. Hendrick, supra; Commonwealth ex rel. Raucci v. Price, 409 Pa. 90, 185 A. 2d 523 (1962) ; and Commonwealth ex rel. Dronsfield v. Hohn, 390 Pa. 434, 135 A. 2d 757 (1957).

Even if the doctrine of the "fruit of the poisonous tree" does apply to extradition proceedings, extradition would be required on the record of this case.

The doctrine of the "fruit of the poisonous tree" becomes applicable once a primary illegality, generally an illegal search or an illegal arrest, has been established. In this case, an illegal arrest has been established. Nor does there appear to be any question that the evidence that was obtained from Arnold and that caused the Philadelphia police to call the Atlanta police was obtained as a result of the illegal arrest and, hence, was "fruit of the poisonous tree." However, none of this evidence was presented at the hearing before this court in support of the extradition.

Arnold's contention is that the evidence that was presented in support of the extradition, i.e., the testimony of Mrs. Williams and Officer Bailey, comes within the doctrine of "fruit of the poisonous tree" because this evidence would never have been brought to the attention of the Pennsylvania authorities but for the evidence illegally obtained when Arnold was arrested.

The United States Supreme Court, quoting from Maguire, Evidence of Guilt 221 (1959), has held that the question to be answered in determining whether

evidence is the "fruit of the poisonous tree" is " '. . . whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint' ": Wong Sun v. United States, supra at 488.

Applying this test to the present case, it appears that the testimony of Mrs. Williams and Officer Bailey should not be excluded. It might be said that the testimony came to the attention of the Pennsylvania authorities "by exploitation" of Arnold's illegal arrest. However, it did not come to the attention of the Georgia authorities by exploitation of the arrest, and it seems more sensible to apply the test to the Georgia authorities than to the Pennsylvania authorities. Although, strictly speaking, the evidence was presented to this court by the Pennsylvania authorities, it was presented on behalf of the State of Georgia to support its demand for extradition. More important, the doctrine of the "fruit of the poisonous tree" is designed to deter illegal conduct by forbidding the introduction of evidence that was obtained (or, in the words of the United States Supreme Court in Wong Sun v. United States, supra, was "come at") as a result of the illegal conduct.[3] Georgia's obtaining Mrs. Williams and Offi-

---

[3] The exclusion of otherwise legally obtained evidence only where it is "come at" through other illegal evidence or through an illegal arrest, is, as applied in this case, consistent with the purpose of the exclusionary rule—to deter illegal police conduct. Police officials might often act illegally, even knowing that illegally seized evidence (including evidence obtained through an illegal arrest) cannot be used in court, on the belief or hope that the illegally obtained evidence might lead to other evidence. However, where the result of illegally obtaining evidence is to fortuitously connect other evidence, already obtained and unknown to the police who act illegally, with a party who has standing to object to the illegally obtained evidence, it cannot be said that the result could in any

cer Bailey as witnesses in this case was in no way police-related to the conduct of Pennsylvania authorities. In fact, Georgia knew about the relation of Mrs. Williams and Officer Bailey to the alleged crime long before the Pennsylvania police acted illegally, and simply because their testimony would not have been presented but for the illegal conduct of Pennsylvania authorities is not sufficient to render the testimony "fruit of the poisonous tree."

Arnold also appears to argue that he is entitled to release because the original authority for his confinement pending extradition was based on the illegally obtained evidence. A person arrested illegally, however, is not entitled to release where, as here, subsequent evidence, untainted by the illegal arrest, validates the authority for his confinement.

### ORDER

And now, February 20, 1969, Leonard Arnold's petition for writ of habeas corpus pursuant to section 10 of the Uniform Criminal Extradition Act is denied, and he shall remain in the custody of the Governor and shall be extradited to Georgia in accordance with the procedures of the Uniform Criminal Extradition Act.

way have been intended by the police who acted illegally. Prohibiting the admission of the already obtained evidence, therefore, would not deter the police from acting illegally.